**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**JAMES P. BAILEY,**

       **Plaintiff**

**v.**                                                                 **Civil Case No. 2:04cv249**

**GORDON R. ENGLAND,**
**Secretary of the Navy,**

       **Defendant.**

**FINAL JUDGMENT ORDER AND ORDER TO SHOW CAUSE**

This case came on for a hearing on the Court's June 8, 2005 Order to Show Cause why

this case should not be dismissed for Plaintiff's alleged failure to prosecute his claim,

Defendant's Motion for Summary Judgment, and to finalize a Final Pretrial Order.  This Final

Judgment Order and Order to Show Cause explains the Court's minute Order from that hearing.

Plaintiff James P. Bailey ("Bailey") is a repeat pro se litigant.  This time he brought a

$1.5 million Title VII discrimination lawsuit against his former employer, the United States

Department of the Navy ("Defendant").  Before accepting a buyout to retire in September 2003,

Plaintiff held a civilian position as a Medical Records Clerk at the Naval Medical Center

Portsmouth.  This lawsuit stems from a two-week suspension he received in 2002 for

belligerence, disrespect, threatening conduct, failure to wear shoes in the workplace, and delay in

carrying out work assignments.  Plaintiff claims that he was actually suspended on account of his

race (black), color (light skinned), religion (Christian), reprisal (prior Equal Employment

1

Opportunity activity), mental disabilities (depression, anxiety), and physical disabilities (pinched nerves, degenerative joint disease, breathing problems).

The suspension leading to this lawsuit was not the first time Plaintiff had been suspended due to his confrontational demeanor.  Plaintiff had a well-documented history of menacing behavior, including browbeating fellow employees about religious subjects and yelling at supervisors who attempted to correct his behavior.  In fact, Plaintiff's comportment was so disruptive that four of his co-workers complained to the Merit Systems Protection Board that they had been constructively suspended as a result of his behavior.  When the head of Plaintiff's department approached Plaintiff about his behavior and inquired about what he could do to help Plaintiff correct it, Plaintiff demanded that he be paid $1.5 million and promised to keep filing lawsuits until he received it.  Plaintiff kept that promise.

This Court and counsel for Defendant have bent over backwards to accommodate Plaintiff because he is a pro se litigant.  Plaintiff has responded to the deference he was afforded with contemptible conduct towards Defendant and outright disrespect for this Court and the system of justice.  Plaintiff has violated this Court's orders, failed to appear at depositions and mandatory attorney conferences, and most recently failed to appear at the Court-ordered Final Pretrial Conference, at which time a dispositive motion was scheduled for argument.  Plaintiff has further neglected his discovery and disclosure obligations and done nothing whatsoever to prosecute this claim.  He has wasted this Court's and Defendant's time, money, and other resources.  Worse yet, he has made a mockery of the justice system's safeguards for pro se litigants.  Plaintiff's case is frivolous and his conduct is vindictive.

For those reasons and others explained below, Defendant's Motion for Summary

Judgment is **GRANTED**, Defendant is **AWARDED** reasonable attorney's fees and costs, and

Defendant is **ORDERED** to show cause why he should not be sanctioned for his conduct in this

matter, all subject to the explanation herein.


## I.      FACTUAL BACKGROUND[1]

### A.      Plaintiff's Job Responsibilities and Supervisors

At all times relevant to this matter, Plaintiff was employed as a Medical Records Clerk in

the Outpatient Records Department, Health Information Management, Patient Administration

Department ("PAD") at the Naval Medical Center Portsmouth ("NMCP").  The Outpatient

Records Department maintains the outpatient medical records of patients at the NMCP.  See

DEX 1, Sanderson Decl. ¶ 2, 4.  As a Medical Records Clerk, Plaintiff's responsibilities included

---

[1]The Defense exhibits ("DEX") cited to in this summary are attached to Defendant's Memorandum in Support of Motion for Summary Judgment.  Doc. No. 12 (May 23, 2005). Other than the sweeping allegations of discrimination and retaliation made in his Complaint, and bald allegations that individuals involved in this case are biased or lying, Plaintiff has not pointed to any evidence contradicting the factual portrayal contained in Defendant's Memorandum in Support of Motion for Summary Judgment and the exhibits attached.  Having failed to respond to Defendant's Motion for Summary Judgment at all, the facts contained in the attached exhibits are taken as confessed.  See Fed. R. Civ. P. 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."); Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading.").  Defense counsel adequately informed Plaintiff of the consequences of failing to respond to the Motion for Summary Judgment in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Eastern District of Virginia Local Rule 7(k).  See Def.'s Mot. for Summ. J., Doc. No. 11 (May 23, 2005).  Morever, Plaintiff failed to timely answer or object to Defendant's Request for Admissions during discovery.  See Def.'s Opp. to Pl.'s Mot. for Continuance ¶ 6, Doc. No. 15 (June 6, 2005).  Accordingly, those admissions are also taken as confessed.  See Fed. R. Civ. P. 36(a) ("The matter is admitted unless, within 30 days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . .).

the daily maintenance, preservation and securing of outpatient treatment records under active use. See DEX 5, Position Description ("Major Duties").  Plaintiff updated files, coded them, tracked loose lab reports and test results, and made sure that patents' medical records were properly documented.  Id.; DEX 1, Sanderson Decl. ¶ 4.

Plaintiff had four supervisors during the period of time relevant to this suit.  Plaintiff's acting first-line supervisor was Brenda Stith ("Stith"), the Lead Medical Records Technician. Stith served as the Acting Outpatient Records Supervisor due to a retirement.  Plaintiff's second-line supervisor was Rosemary Vaughan ("Vaughan"), the Medical Records Administrator.  The third-line supervisor of Plaintiff was LT Danielle Wenzel ("Wenzel"), the Division Officer. Finally, CDR Patrick A. Sanderson, the head of the PAD, was Plaintiff's fourth-line supervisor. See DEX 15, Admissions ¶¶ 7-10.

**B.    Plaintiff's Employment History Prior to the Present Complaint**

While the specific events giving rise to this Complaint took place in 2000, Plaintiff already had a reputation for being difficult to manage.  See DEX 1, Sanderson Decl. ¶ 7. According to Sanderson, his fourth-line supervisor, Plaintiff "was a trying and difficult employee, and required a significant amount of management time and effort to get him to work and perform the duties he needed to perform . . ."  Id. ¶ 18.  Stith, his acting first-line supervisor, observed that "[a]rguing with his supervisor was not unusual because [Plaintiff] did not always take direction well and believed he was right, and others were wrong."  DEX 4, Stith Decl. ¶ 7. Vaughn, Plaintiff's second-line supervisor, who was once his first-line supervisor when Plaintiff worked in a different division, stated that Plaintiff "had a difficult time getting along with other employees. . . . He would engage in conduct deemed threatening by female employees, and try to

4

force his religious beliefs and interpretations of the Bible on others."  DEX 3, Vaughn Decl. ¶ 3.

Even a third-party, the Equal Employment Opportunity Commission ("EEOC"), acknowledged that Plaintiff was a difficult employee to work with and manage.  In 1996, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging discrimination based on religion.  The complaint was squarely rejected and the EEO Decision noted that "[t]he AJ found that many witnesses testified credibly that [Plaintiff] was disrespectful to his supervisor and team leader, as well as others and that he engaged in the discussion of religion to an extensive extent . . ."  DEX 11, EEO Decision, Case DON-96-00183-019.

In 1997, Plaintiff was suspended for unauthorized absence, falsification, and disrespectful conduct.  DEX 13, 1997 Disciplinary Suspension.  The suspension was precipitated by Plaintiff's yelling at a supervisor that she was "getting on [his] nerves" and telling her to "get out of [his] face."  Id.  As part of that suspension, Plaintiff was issued a Letter of Caution for allegedly calling fellow employees "devils" and excessively using religious expressions.  DEX 12, EEO Decision, Case DON 97-00183-003.  The 1997 suspension prompted Plaintiff to file another EEO discrimination claim, which was also rejected.  Id.

Plaintiff's conduct in the workplace was so bad that four other employees actually filed a claim with the Merit Systems Protection Board ("MSPB") complaining that they were constructively suspended as a result of his behavior.  See DEX 14, MSPB Decision in Peoples, et al v. Navy, DC-0752-98-0361-B-1, et al.  Although the MSPB Administrative Judge ("AJ") found that the four employees were not constructively suspended, the AJ acknowledged that Plaintiff "was a vexatious co-worker" who routinely engaged in "general religious comments, staring at [co-workers], taking notes, [and] general name calling."  Id. at 20.

5

Finally, in 1999, Sanderson, who was new to his post as head of the PAD, was made aware of Plaintiff's performance problems and endeavored to resolve them.  See DEX 1, Sanderson Decl. ¶ 7-11.  The endeavor was unsuccessful, to say the least:

> I asked [Plaintiff] how we could help him, and asked if he had talked with the Human Resources Office [("HRO")] about a position either in or out of the NMCP command that would better suit his situation. [Plaintiff] responded that the HRO was "no good."  I asked him if he would like my help in looking for another position within the PAD for him, and he responded that he had already "done everything" in PAD.  Then, much to my surprise, [Plaintiff] stated that he wanted $1.5 Million Dollars so that he could leave the command and go home. [Plaintiff] also said that he was not going to top filing lawsuits until he got his $1.5 Million.

Id. ¶ 11.  As it turns out, Plaintiff kept his promise.

### C.      Events Leading to the Present Complaint[2]

To promote safety and present a professional image to customers, NCMP policy requires that employees where shoes in the workplace.  Id. ¶ 13.  Plaintiff had been seen on some occasions not wearing shoes and was instructed by Stith, Vaughan, and Wenzel that he needed to wear them at all times.  DEX 4, Stith Decl. ¶ 5; DEX 3, Vaughan Decl. ¶ 6; DEX 2, Wenzel Decl. ¶ 5.  Plaintiff claimed that he did not wear shoes because he was experiencing foot problems.  DEX 4, Stith Decl. ¶ 5; DEX 2, Wenzel Decl. ¶ 5.  Though he provided no documentation of a medical condition relating to his feet, Plaintiff's alleged foot problems were accommodated and he was given permission to wear leather slippers in lieu of shoes.  DEX 4, Stith Decl. ¶ 5; DEX 3, Vaughan Decl. ¶ 6; DEX 2, Wenzel Decl. ¶ 5.

Despite this accommodation, Plaintiff was seen not wearing shoes or slippers on July 28,

---

[2]In addition to the numerous specific citations to Defense exhibits in this section, this summary is further supported by the Final Agency Decision on Plaintiff's EEO complaint, see DEX 9, and by Plaintiff's admissions.  See DEX 15; see also supra note 1.

2000 by Vaughan and Wenzel.  DEX 3, Vaughan Decl. ¶ 6; DEX 2, Wenzel Decl. ¶ 6.  This

prompted Wenzel to instruct Vaughan to prepare a Letter of Caution to Plaintiff.  DEX 2, Wenzel

Decl. ¶ 6.  Stith in turn  instructed Plaintiff to put his shoes back on.  DEX 4, Stith Decl. ¶ 6.

Plaintiff complied.  Id.  However, soon after being told to put on his shoes, Plaintiff appeared in

Vaughan's office and demanded to know "[w]hat business it is of yours whether or not I wear my

shoes?"  DEX 3, Vaughan Decl. ¶ 7.  Plaintiff also scolded Vaughan and challenged her

supervisory authority over him.  Id.  Plaintiff's outburst was so loud that it was overheard

throughout the Outpatient Records Department and caused Wenzel to go to Vaughan's office to

try and calm Plaintiff down.  Id.; DEX 2, Wenzel Decl. ¶ 8; DEX 4, Stith Decl. ¶ 7.  Nonetheless,

Plaintiff persisted in his tirade, accused Wenzel of lying about his shoes, and refused to return to

his work station.  DEX 2, Wenzel Decl. ¶ 9.  When Plaintiff finally did return to work, he made a

parting threat to Wenzel, warning her that "you have messed with the wrong person."  Id.  The

episode triggered a disciplinary investigation.  See DEX 7, Pre-Action Investigation (22 Sep 00).

Three months later, on November 7, 2000, it came to Stith's attention that Plaintiff had

two stacks of loose medical documents on his desk, each approximately one-foot tall.  DEX 4,

Stith Decl. ¶¶ 9-10.  No other Medical Records Clerk under Stith's supervision had a backlog

that big.  Id. ¶ 9.  Accordingly, Stith instructed Plaintiff to address the backlog, prompting a

hostile response from Plaintiff and a declaration that he had no intention of filing any more

medical documents that day.  Id. ¶ 11.  Vaughan then intervened and instructed Plaintiff to

complete his work assignments.  Id. ¶ 12; DEX 3, Vaughan Decl. ¶ 9.  Plaintiff protested that he

was on "light duty" with medical restrictions.  Id.  That was not the case: Plaintiff had not

requested a lighter assignment nor had he submitted any documentary evidence that he had a

medical problem.  DEX 1, Sanderson Dec. ¶ 15.  (Plaintiff was permitted to work less time at the

public window based on a September 20, 2000 doctor's prescription, but that did not excuse him

from filing medical documents.  DEX 4, Stith Decl. ¶ 12.)  Just as he had on July 28, 2000, and

many times before that, Plaintiff became belligerent and yelled at Vaughan.  DEX 3, Vaughan

Decl. ¶ 10; DEX 2, Wenzel Decl. ¶ 13.  Consequently, Wenzel intervened and instructed Plaintiff

to return to work.  Id.  In response, Plaintiff warned Wenzel that he would "take action" against

her and left.  Id.

Based on these two events, disciplinary action was proposed and eventually carried out.

On March 27, 2001, Wenzel issued Plaintiff a Notice of Proposed suspension due to Plaintiff's

conduct on July 28 and November 7, 2000.  DEX 2, Wenzel Decl. ¶ 14.  Sanderson, the deciding

supervisor, suspended Plaintiff for two weeks beginning on April 30, 2001.  DEX 1, Sanderson

Decl. ¶ 12.  Plaintiff subsequently filed an administrative discrimination complaint on July 31,

2001.  DEX 9, Final Agency Decision.  Plaintiff's claim was deemed baseless by the Naval

Complaints Administration, id., and the EEOC upheld the administrative decision on January 9,

2004.  DEX 10, EEOC Appeal, DON 01-00183-093.  Plaintiff thereafter filed this suit.

Undeterred, Plaintiff filed the present $1.5 million lawsuit alleging discrimination and retaliation

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and the

Rehabilitation Act of 1973, 29 U.S.C. § 794(a).[3]

---

[3]Plaintiff's Complaint identifies his Union Contract as the source of his discrimination
claim.  However, to the extent that his claims are cognizable–which, it turns out, they are
not–Title VII is the proper litigation vehicle.  See Brown v. Gen. Servs. Admin., 425 U.S. 820,
832-33 (1976); see also infra note 5 (addressing the Court's responsibility to construe a pro se
pleading liberally).

## II.      PROCEDURAL HISTORY

### A.      Present Procedural Posture

Plaintiff's Complaint was filed on April 14, 2004, along with the mandatory $150.00

filing fee.  On August 19, 2004, the case was abated because Plaintiff failed to effect service of

process.  On September 17, 2004, the Court granted Plaintiff twenty-one (21) days to execute

valid service of process.  Plaintiff failed to do so.  On October 20, 2004, Plaintiff returned an

executed summons, which was filed subject to defect because it was untimely.  On November 3,

2004, the Court ordered the Complaint timely filed and directed Defendant to respond.

Defendant answered timely on December 20, 2004 and the matter was set for trial on July 7,

2005.  A summary of what happened between the filing of the Complaint and the date of this

Order follows.

### B.      Plaintiff's Failure to Prosecute This Case

Plaintiff has utterly failed to prosecute this case in any respect whatsoever.  Plaintiff has

failed to comply with various provisions of this Court's Rule 26(f) Pretrial Order, Doc. No. 7

(Dec. 23, 2004), and Rule 16(b) Scheduling Order.  Doc. No. 8 (Jan. 11, 2005).  See Def.'s Opp.

to Mot. for Continuance ¶¶ 3-6, 12,  Doc. No. 15 (June 6, 2005).  First, Plaintiff did not appear at

Defense  counsel's office for a mandatory attorney conference on January 2, 2005.  Id. ¶ 3.

Second, Plaintiff did not tender his initial disclosures identifying persons and documents

supporting his claim, which were due on January 24, 2005.  Id. ¶ 4.  Next, Plaintiff's discovery

deadline came and went on April 28, 2005 without Plaintiff propounding any discovery.  Id. ¶ 5.

Following that, on April 11, 2005, Defendant propounded to Plaintiff Requests for Admissions,

Interrogatories and Requests for Production of Documents, to which Plaintiff neither objected

nor responded.  Id. ¶ 6; see also supra note 1.  Plaintiff thereafter failed to propound mandatory

pretrial disclosures to Defendant, which were due on June 1, 2005.  Id. ¶ 12.  Finally, Plaintiff

failed to provide Defendant with a proposed Order on Final Pretrial Conference, as he was

required to do, and did not show up for the mandatory pretrial attorneys conference to review the

proposed order on June 10, 2005.  Def.'s Letter to Clerk of Court (June 13, 2005).  All of these

failures are in direct contravention of Court orders.[4]

Further demonstrating Plaintiff's cavalier attitude towards prosecuting his claim, he failed

to participate in de bene esse depositions of Wenzel and Sanderson.  The depositions were

approved by the United States Magistrate Judge in this matter because Wenzel and Sanderson

have been transferred to posts outside of Virginia.  Though Plaintiff had no affirmative burden to

attend, the depositions were scheduled to accommodate his schedule and involved witnesses that

are unquestionably central to his claim.  The Magistrate Judge informed Plaintiff of all of this

and warned him of the consequences of not participating.  See id. ¶¶ 8-11, 13; see also

Magistrate's Order, Doc. No. 13 (May 25, 2005).

---

[4]The failure to comply with a court order is alone ground for dismissal for failure to
prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, even in a case
involving a pro se litigant.  Tinsley v. Quick & Reilly, Inc., 216 F.R.D. 337, 338 (E.D. Va. 2001)
(Friedman, J.).  Indeed, Rule 41(b) gives courts wide discretion to dismiss a case for failure to
prosecute.  See Krodel v. Houghtaling, 468 F.2d 887, 887-88 (4th Cir. 1972); Cintron-Lorenzo v.
Departamento del Consumidor, 312 F.3d 522, 525-26 (1st Cir. 2002).

In his memorandum requesting that the Court not dismiss his case, Doc. No. 17 (June 16,
2005), Plaintiff cites health concerns, lack of legal knowledge, and inability to obtain a lawyer as
grounds for failing to prosecute.  This Court previously rejected Plaintiff's Motion for a
Continuance of the trial date for these reasons, see Order, Doc. No. 16 (June 8, 2005), and they
are equally untenable as justifications for not prosecuting a claim.  See Tinsley, 216 F.R.D. at
338.  However, the decision to dismiss a claim for failure to prosecute is a discretionary one, not
a mandatory one.  Having considered the merits of this case, it is evident that Defendant is
deserving of judgment, not simply a dismissal.

Next came the last straw.  On May 23, 2005, Defendant filed a Motion for Summary Judgment.  Plaintiff thereafter filed a Motion for a Continuance on June 3, 2005, citing health reasons, lack of legal knowledge, and his inability to obtain legal counsel.  See Pl.'s Mot. for Continuance, Doc. No. 14.  The Court denied the Motion and, based on the above described conduct, ordered Plaintiff to show cause why this case should not be dismissed for failure to prosecute.  See Order, Doc. No. 16 (June 8, 2005).  Plaintiff again cited health reasons, lack of legal knowledge, and his inability to obtain legal counsel as reasons why this case should not be dismissed for failure to prosecute.  See Pl.'s Mem., Doc. 16 (June 16, 2005).  These excuses are legally insufficient to avoid dismissal for failure to prosecute a claim.  See supra note 4.

Plaintiff did not respond to Defendant's Motion for Summary Judgment by the assigned deadline of June 13, 2005, despite being warned by Defendant of the consequences of failing to do so.  See supra note 1.  On June 22, 2005, this case came on for a hearing on this Court's June 8, 2005 Order to show cause why this case should not be dismissed for failure to prosecute, on Defendant's Motion for Summary Judgment, and to finalize the Order on Final Pretrial Conference.  Plaintiff did not show up.  Before entertaining any argument from Defendant, the Court waited twenty minutes for Plaintiff to arrive and instructed the Court Security Officer to seek Plaintiff out in the Courthouse.  He was nowhere to be found.

### C.    Plaintiff's Prior Lawsuits

Plaintiff is a repeat player in this Court, as he promised his fourth-fine supervisor, Sanderson, he would be.  See DEX 1, Sanderson Decl. ¶ 11.  His procedural antics in this case are consistent with his conduct in the prior suits Plaintiff has filed in this Court.  In 1998, Plaintiff initiated a pro se job discrimination suit against the Department of the Navy, but the

11

case was never actually docketed because his motion to proceed in forma pauperis was denied. See Bailey v. Dalton, 2:98mc007 (E.D. Va. 1998). In 2000, Plaintiff initiated another pro se job discrimination suit against the Department of the Navy. This time, his case was removed from the miscellaneous case list and placed on the civil docket because he paid the filing fee after being denied a motion to proceed in forma pauperis. Plaintiff sought $200,000 in damages. That suit was ultimately dismissed for failure to effect service of process. See Bailey v. Danzig, 2:00cv105 (E.D. Va. 2000). Finally, in 2000, Plaintiff also sought review of an administrative employment decision and requested $1,000,000 in damages. That case was also dismissed for failing to effect service of process. See Bailey v. Danzig, 2:00cv106 (E.D. Va. 2000).


III.     MOTION FOR SUMMARY JUDGMENT

   A.     Legal Standard

        1.     Summary Judgment

        The standard for summary judgment is familiar and well-settled. It should only be granted if the moving party demonstrates that "the pleadings, depositions [and] answers to interrogatories . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the movant so demonstrates, the burden of production, not persuasion, shifts to the non-moving party, Celotex at 477 U.S. at 322-23, who must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(c)). To avoid summary judgment, the non-movant "must do

more than simply show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Unresolved

facts are considered in the light most favorable to the non-moving party.  United States v. Lee,

943 F.2d 366, 368 (4th Cir. 1991).

### 2.    Title VII Discrimination and Retaliation Claims

In Title VII actions, in the absence of direct evidence of discrimination or retaliation, as is

the case here, the McDonnell-Douglas burden-shifting schema applies.  See McDonnell-Douglas

v. Green, 411 U.S. 792 (1973).  The plaintiff-employee carries the initial burden of establishing a

prima facie case of discrimination or retaliation by the employer.  Munday v. Waste Mgmt. of N.

Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997) (citing Ross v. Communications Satellite Corp., 759

F.2d 355, 365 (4th Cir. 1985)).  A prima facie claim is made out when the plaintiff shows (1) that

he is a member of a protected class or was engaged in protected activity; (2) that the employer

took adverse employment action against him; and (3) that a sufficient causal nexus exists

between the protected class membership or protected activity and the adverse employment action.

Id.  Little or no direct evidence is actually required to make out a prima facie case of unlawful

discrimination or retaliation.  Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1229 (4th Cir.

1998).  Indirect evidence from which a court may infer either is sufficient.  Id.

A prima facie case creates a rebuttable presumption of unlawful discrimination or

retaliation and shifts the burden to the defendant-employer to articulate a legitimate, non-

retaliatory justification for the plaintiff's discharge.  Munday, 126 F.3d at 242.  This is a burden

of production, not persuasion.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).  If the

defendant produces such evidence, the burden shifts back to the plaintiff to demonstrate that the

reasons proffered were in fact a pretext for discrimination or retaliation.  <u>Carter v. Ball</u>, 33 F.3d

450, 459 (4th Cir. 1994).  At that point, the <u>McDonnell-Douglas</u> framework becomes irrelevant,

the initial presumption evaporates, and only the question whether the defendant-employer

actually discriminated or retaliated against the plaintiff-employee remains.  <u>St. Mary's</u>, 509 U.S.

at 510.  The ultimate burden of persuasion rests with the plaintiff to show by a preponderance of

the evidence that the reasons for the discharge proffered by the defendant were not true, but in

fact were a pretext for unlawful discrimination or retaliation.  <u>Texas Dep't of Cmty. Affairs v.</u>

<u>Burdine</u>, 450 U.S. 248, 253 (1981); <u>St. Mary's</u>, 509 U.S. at 507-08.

**B.    Discussion**

The only evidence supporting Plaintiff's prima facie case is that he is a member of a

protected class and that his employer was aware of his prior EEO activity.  Assuming that this

alone is sufficient to shift the burden to Defendant to articulate a legitimate, non-discriminatory

and non-retaliatory reason for disciplining Plaintiff[5]–although it almost certainly is

not–Defendant has more than satisfactorily satisfied its burden.  As explained in the summary of

facts above, based on sworn affidavits and deposition testimony, Plaintiff proved himself to be

unproductive, disrespectful, belligerent, difficult to work with, and even threatening.

Unquestionably, "[s]uch contrariness, such inability to get along with employers, supervisors and

---

[5]To safeguard the rights of litigants pursuing claims without the aid of counsel, pleadings by <u>pro se</u> parties are construed liberally.  <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978). However, "[p]rinciples requiring generous construction of <u>pro se</u> complaints are not . . . without limits.  <u>Gordon</u> directs district courts to construe <u>pro se</u> complaints liberally.  It does not require those courts to conjure up questions never squarely presented to them.  District judges are not mind readers."  <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985).  Accordingly, this Court will evaluate Plaintiff's claim as though he managed to state a prima facie case in spite of severe misgivings that he has even done that.  Even so, this Court will not "conjure up" reasons why his claim mas merit, for it certainly does not.

co-workers, fully qualify as legitimate non-discriminatory reasons to [discipline] an employee."
Olivares v. NASA, 934 F. Supp. 698, 703-04 (D.Md. 1996) (Messitte, J.) (citing Evans v.
Technologies Applications & Serv. Co., 80 F.3d 954 (4th Cir. 1996)).  Not only were there
grounds on which to discipline Plaintiff, based on the evidence presented, Defendant had ample
reasons to fire him outright.

Accordingly, Defendant has shifted the burden to Plaintiff to point to evidence tending to
indicate that the reasons proffered were merely a pretext for discrimination or retaliation.  This he
cannot do.  Plaintiff has done nothing but level sweeping, unsubstantiated charges of
discrimination in his pleadings.  However strongly Plaintiff may feel that he was discriminated
against, only the perception of the individual taking the adverse employment action is relevant;
the subjective belief of the party affected by the employment decision has no bearing on whether
the action was actually discriminatory or retaliatory.  Tinsley v. First Union Nat. Bank, 155 F.3d
435, 444 (4th Cir. 1998); Olivares, 92 F.Supp. at 704 (citing Goldberg v. B. Green & Co., Inc.,
836 F.2d 845, 848 (4th Cir. 1988)).  Plaintiff has not pointed to any evidence of discriminatory
intent whatsoever.  In fact, he has not pointed to anything at all.  See Fed. R. Civ. P. 56(e) ("If the
adverse party does not so respond, summary judgment, if appropriate, shall be entered against the
adverse party."); Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading
is required, other than those as to the amount of damage, are admitted when not denied in the
responsive pleading."); see also supra note 1.  Defendant's Motion for Summary Judgment is
therefore **GRANTED** and **JUDGMENT** is entered in favor of Defendant.

15

## IV.    ATTORNEY'S FEES

Under Title VII, this Court, in its discretion, may award the prevailing party–plaintiff or

defendant–a reasonable attorney's fee, including litigation expenses and costs.  42 U.S.C. §

2000e-5(k).  Normally, a prevailing plaintiff should be awarded reasonable attorney's fees, unless

special circumstances indicate otherwise.  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).  A

prevailing defendant, on the other hand, should generally only be awarded fees where a lawsuit is

found to be "frivolous, unreasonable, or without foundation, even though not brought in

subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978); see also

Hensley, 461 U.S. at 429 n.2 ("A prevailing defendant may recover an attorney's fee only where

the suit was vexatious, frivolous, or brought to harass or embarrass the defendant.").

Of course, this Court is ever mindful that

> [i]t is important that a district court resist the understandable temptation to engage in post
> hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action
> must have been unreasonable or without foundation.  This kind of hindsight logic could
> discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure
> of ultimate success.

Christiansburg, 434 U.S. at 421-22.  Indeed, the United States Court of Appeals for the Fourth

Circuit has emphasized that "[i]t was in the federal courtroom that litigation brought to life the

abstract guarantees of racial justice." Blue v. United States Dept. of the Army, 914 F.2d 525,

534 (1990).  Thus, courts must take care not to chill civil rights litigation through the imposition

of attorney's fees or other sanctions simply because a plaintiff did not prevail.  Id. at 534-35.

At the same time, the Fourth Circuit has also recognized that frivolous civil rights suits

bring disrepute on the justice system and serve more to hinder than help the advancement of

tangible civil rights.  For certain,

16

> no litigant can be allowed to abuse federal courts or opposing litigants with impunity. Like all other litigants, civil rights litigants face the prospect of sanctions if they pursue patently frivolous lawsuits.  "Racial or religious discrimination is odious but a frivolous or malicious charge of such conduct . . . is at least equally obnoxious.  <u>Carrion v. Yeshiva Univ.</u>, 535 F.2d 722, 728 (2d Cir. 1976).  Equality under law means that the rules of law, including those concerning sanctions, apply to everyone.  [citation omitted.]  It would be an irony if the concept of equality under law, so fundamental to the goal of civil rights, were underwritten with exceptions for Title VII litigants from the legal rules that apply to all others.

<u>Id.</u>  This latter admonishment applies to the case at hand: Plaintiff's conduct in this matter demonstrates the frivolousness of his claim and the vindictiveness he harbors for Defendant.

There is absolutely no credible evidence of discriminatory or retaliatory intent whatsoever in this case.  The Naval Complaints Administration concluded this.  So did the EEOC.  All of Plaintiff's claims of discrimination and retaliation are belied by his conduct in this case: ignoring his discovery and disclosure obligations, failing to appear at depositions and mandatory attorney conferences, and, most tellingly, simply not showing up at a Court-ordered hearing on the Final Pretrial Order, at which time a dispositive motion was scheduled for argument.  Making matters worse, the Court and Defense counsel have bent over backwards to give Plaintiff every opportunity to vindicate the rights he (frivolously) alleges have been violated.  <u>See</u> Order, Doc. No. 2 (Sept. 17, 2004) and Order, Doc. No. 5 (Nov. 3, 2004) (extending the time for service of the complaint); Magistrate's Order, Doc. No. 13 (May 25, 2005) (documenting a teleconference where the Magistrate Judge explained to Plaintiff the purpose of depositions, what was required of Plaintiff, and accommodating Plaintiff's schedule in setting a date for the depositions); Def.'s Opp. to Mot. for Continuance Exhs. A and B, Doc. No. 15 (June 6, 2005) (reminding Plaintiff of requirements imposed on him by the Federal Rules of Civil Procedure and the Local Rules); Def.'s Mot. for Summ J., Doc. No. 11 (May 23, 2005) (providing Plaintiff <u>Roseboro</u> and Local

Rule 7(k) notice explaining the ramifications of summary adjudication and Plaintiff's

responsibilities associated therewith); Order, Doc. No. 16 (June 8, 2005) (granting Plaintiff an

opportunity to show cause why this case should not be dismissed for failure to prosecute and

advising Plaintiff of the consequences of not showing cause).  If Plaintiff had a case, he was

given the chance to prove it.  His failure to do so leads to one conclusion: his claims are

frivolous.

Despite this, Plaintiff has pursued this case, imposing high costs–tangible and

intangible–on Defendant and the justice system.  Contrary to Plaintiff's allegations, based on the

evidence before the Court, it is clear that Defendant did everything it could to accommodate

Plaintiff rather than take any adverse employment action against him at all.  Indeed, despite his

verified record of belligerence, disrespect, unproductiveness, and unwillingness to obey the

simplest of workplace directives, instead of terminating Plaintiff, Defendant offered him, and

Plaintiff accepted, a separation agreement permitting him to retire early from federal service and

receive a buyout.  To thank Defendant for its leniency, accommodations, and the separation

incentive it paid him, Plaintiff rewarded Defendant with this $1.5 million lawsuit alleging serious

civil rights violations, on which Defendant has been forced expend scarce resources to defend.

Plaintiff was apparently determined to keep his promise to Sanderson to keep filing lawsuits until

he was paid $1.5 million.  That day will never come.

Even if Plaintiff does in fact have a prima facie Title VII case, about which this Court has

already expressed severe misgivings, see supra note 5, that does not make it any less frivolous or

vindictive.  As the Fourth Circuit has explained:

It will often become plainly apparent in discovery that the employer has produced a

18

legitimate explanation for the employment decision of which plaintiff complains.  It is then plaintiff's burden to present evidence that the employer's explanation is a mere pretext for racial discrimination.  Clearly, if plaintiff has no evidence whatsoever of pretext, the continued litigation of plaintiff's case can be frivolous despite the existence of a prima facie case.

Blue, 914 F.2d at 543; see also Introcaso v. Cunningham, 857 F.2d 965, 967-68 (4th Cir. 1988)

("[I]t is possible for a plaintiff to establish a prima facie case . . . which is nonetheless

groundless. . . .").  Had Plaintiff participated at all in this litigation, he may have eventually

realized that pursuing his claim was fruitless.  By neglecting to attend depositions, refusing to

engage in discovery, and failing to appear at attorney conferences and a Court-ordered hearing,

that realization escaped Plaintiff.  Now Plaintiff must shoulder the consequences.  The fact that

Plaintiff is a pro se litigant is no excuse.

Accordingly, the Court **FINDS** that Plaintiff's claims are wasteful, frivolous,

unreasonable, and vindictive and will therefore **AWARD** Defendant reasonable attorney's fees

and costs.  Defendant is **ORDERED** to submit to the Court, copy to Plaintiff, a legal

memorandum, supporting affidavit, and other necessary materials itemizing its reasonable

attorney's fees and costs no later than Tuesday, July 5, 2005.  A hearing to determine the amount

of a reasonable award will be conducted on Thursday, July 7, 2005 at 9:30 a.m.  Plaintiff is

**ADVISED** that he may appear at the July 7, 2005 hearing to contest the reasonableness of the

proposed attorney's fees and costs and that he may file a memorandum or other material in

support of his position in advance of the hearing.

## V.     SANCTIONS

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, 6 (Wheat.) 204, 227 (1821).  Therefore, courts have inherent discretion to impose sanctions, which are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962).  "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991).

Bringing any lawsuit, much less a lawsuit charging racial, ethnic, religious, and disability discrimination, is a serious endeavor accompanied by consequences for plaintiffs and defendants alike.  Plaintiff has leveled grave accusations against Defendant, none of which have been substantiated.  He has cost Defendant time, money, and intangible hardship by doing so.  What is more, he has caused this Court to divert resources from the administration of justice to oversee a vindictive, frivolous lawsuit.

This Court does not play games, particularly when it comes to the vindication of civil rights and the administration of justice.  As the Fourth Circuit made clear in Blue, "[t]he authority which federal courts possess, an authority often summoned to the side of racial justice, is an authority built upon respect for judicial process.  That authority cannot, in the long run, be effectively invoked on behalf of civil rights enforcement if civil rights litigants could themselves disregard it with impunity." 914 F.2d at 535.  Based on the evidence before the Court, that authority has been patently undermined by the frivolousness of Plaintiff's claim, his

20

vindictiveness, and his cavalier conduct in this litigation.  The only way to restore it is to explore

the possibility of sanctions against Plaintiff.  But, as has been the case at every stage of this

litigation, Plaintiff must be given a full and fair opportunity to respond.  See Chambers, 501 U.S.

at 50 ("A court must, of course, exercise caution in invoking its inherent power, and it must

comply with the mandates of due process . . .").

Accordingly, Plaintiff is **ORDERED** to show cause why he should not be sanctioned for

his conduct in this case.  Plaintiff is **ADVISED** that the Court will determine whether to sanction

him at the hearing on July 7, 2005 at 9:30 a.m.  Plaintiff is further **ADVISED** that he may appear

at the July 7, 2005 hearing to show cause why he should not be sanctioned and that he may file a

memorandum or other material in support of his position in advance of the hearing.


## VI.    CONCLUSION AND ORDER

The Court sincerely hopes that Plaintiff now comprehends the seriousness of the

allegations he has leveled against the Department of the Navy and the consequences of his

conduct.  For the reasons stated above,


1)    Defendant's Motion for Summary Judgment is **GRANTED** and **JUDGMENT** is entered in favor of Defendant.

2)    The Court **FINDS** that Plaintiff's claims are wasteful, frivolous, unreasonable, and vindictive and will therefore **AWARD** Defendant reasonable attorney's fees and costs.  Defendant is **ORDERED** to submit to the Court, copy to Plaintiff, a legal memorandum, supporting affidavit, and other necessary materials itemizing its reasonable attorney's fees and costs no later than Tuesday, July 5, 2005.  A hearing to determine the amount of a reasonable award will be conducted on Thursday, July 7, 2005 at 9:30 a.m.  Plaintiff is **ADVISED** that he may appear at the July 7, 2005 hearing to contest the reasonableness of the proposed attorney's

fees and costs and that he may file a memorandum or other material in support of his position in advance of the hearing.

3)    Plaintiff is **ORDERED** to show cause why he should not be sanctioned for his conduct in this case.  Plaintiff is **ADVISED** that the Court will determine whether to sanction him at the hearing on July 7, 2005 at 9:30 a.m.  Plaintiff is further **ADVISED** that he may appear at the July 7, 2005 hearing to show cause why he should not be sanctioned and that he may file a memorandum or other material in support of his position in advance of the hearing.

4)    The Court **RETAINS JURISDICTION** over this matter to resolve the aforementioned issues regarding the awarding of attorney's fees and costs and the issuance of sanctions.


The Clerk of the Court is **DIRECTED** to forward a copy of this Final Judgment Order

and Order to Show Cause to Plaintiff and counsel for Defendant via Facsimile and United States

mail.

**IT IS SO ORDERED.**


_____/s/_____
UNITED STATES DISTRICT JUDGE


June 27, 2005

Norfolk, Virginia